1   WO

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   Idearc Media, LLC,                          No. CV-09-02147-PHX-JAT

10                      Plaintiff,              **ORDER**

11  v.

12  Palmisano & Associates, P.C., an Arizona
    professional corporation and Palmisano
13  Law, PLLC, an Arizona professional
    limited liability company,
14

15                      Defendants.

16

17         Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 48).

18  The Court now rules on the Motion.

19         **I.     BACKGROUND**

20         Plaintiff Idearc Media, LLC, now known as SuperMedia, LLC (hereinafter

21  "Plaintiff" or "SuperMedia, LLC") publishes the Verizon Yellow Pages and White Pages

22  telephone directories and Superpages.com.  (Plaintiff's Statement of Facts ("Doc. 49") at

23  ¶ 1 and Defendants' Responses to Plaintiff's Separate Statement of Facts ("Doc. 52") at ¶

24  1).  Defendant Palmisano & Associates, P.C. is an Arizona professional corporation and

25  is solely owned by Joseph Palmisano.  (Doc. 32 at ¶ 2; Doc. 34 at ¶ 2; Doc. 49 at ¶ 17;

26  Doc. 52 at ¶ 17).  Defendant Palmisano Law is a single member Arizona professional

27  limited liability company wholly owned by Joseph P. Palmisano.  (Doc. 32 at ¶ 3; Doc.

28  34 at ¶ 3 Doc. 49 at ¶ 18; Doc. 52 at ¶ 18).

## A.     The Contracts

On April 20, 2007, Joseph P. Palmisano executed an Application for Directory Advertising on behalf of Palmisano & Associates, P.C. to purchase advertising in the Greater Tucson directory to be published in November 2007.  (Doc. 49 at ¶ 2; Doc. 49-1 at Exhibit A; Doc. 52 at ¶ 2).  On September 28, 2007, Palmisano & Associates executed an Application for Directory Advertising to purchase advertising in the Phoenix South Valley directory to be published in February 2008.  (Doc. 49 at ¶ 3; Doc. 49-1 at Exhibit B; Doc. 52 at ¶ 3).   On December 14, 2007, Palmisano & Associates executed an Application for Directory Advertising to purchase advertising, including back cover, in the Greater Phoenix directory to be published in June 2008.  (Doc. 49 at ¶ 4; Doc. 49-1 at Exhibit C; Doc. 52 at ¶ 4).   On July 22, 2008, Palmisano & Associates executed an Application for Directory Advertising to purchase advertising in the Greater Tucson directory to be published in November 2008.  (Doc. 49 at ¶ 5; Doc. 49-1 at Exhibit D; Doc. 52 at ¶ 5).  On December 3, 2008, Palmisano & Associates executed an Advertising Agreement to purchase advertising in the Phoenix-North Valley and Phoenix-South Valley directories to be published in February 2009.  (Doc. 49 at ¶ 6; Doc. 49-1 at Exhibit E; Doc. 52 at ¶ 6).

It is undisputed that, in each contract, Palmisano & Associates agreed to pay the monthly rate listed in each Application for Directory Advertising.  (Doc. 49 at ¶ 10; Doc. 52 at ¶ 10).  It is further undisputed that SuperMedia published all of the contracted-for advertisements for Palmisano & Associates and Palmisano Law.  (Doc. 49 at ¶¶ 12-13; Doc. 52 at ¶¶ 12-13).

It is likewise undisputed that: (1) Plaintiff invoiced Palmisano & Associates, (2) Plaintiff received payment, in whole or in part, on some of the invoices; (3) Plaintiff did not receive payments after November 2008; (4) Plaintiff accelerated the remaining balance due under the Agreements upon Defendants' failure to pay the invoices; (5) Palmisano & Associates failed to pay $187,068.00 in advertising charges; (6) on September 16, 2009, interest in the amount of $12,501.54 had accrued on the past due

1    amount and interest continues to accrue at a rate of 18% per annum until judgment is

2    entered; and (7) the Agreements' Terms and Conditions require Palmisano & Associates

3    to pay all collection costs and attorneys' fees.  (Doc. 49 at ¶¶ 19-26; Doc. 52 at ¶¶ 19-26).

4         Plaintiff argues that each contract incorporated a set of standard Term and

5    Conditions which governed the relationship between the Parties.  (Doc. 49 at ¶ 7).

6    Indeed, each contract from April 2007 to July 2008 contained the following language:

7    "This application is subject to the Application for Directory Advertising Terms and

8    Conditions" and "Advertiser has received a duplicate copy of the cover section of this

9    Application and the attached Terms and Conditions, which are hereby incorporated in the

10   cover section of this Application, and has read and understands same."  (Doc. 49-1 at

11   Exhibits A–D).  The December 2008 contract contained the following language: "By

12   signing this Agreement I acknowledge that I have received, read and agree to the Terms

13   and Conditions that are part of this Agreement."  (Doc. 49-1 at Exhibit E).  Defendants

14   deny that the Application included a Standard Set of Terms and Conditions and deny ever

15   reading such Terms and Conditions.  (Doc. 52 at ¶¶ 8-9).

16        **B.    Procedural History**

17        On October 1, 2009, Plaintiff filed a Complaint against Defendants alleging four

18   counts, specifically, breach of contract, breach of the implied covenant of good faith and

19   fair dealing, unjust enrichment, and open account.  (Doc. 1).  On November 17, 2009,

20   Defendant Palmisano & Associates filed for bankruptcy.   Thereafter, the Parties

21   stipulated to dismiss Defendant Palmisano Law without prejudice based on the

22   Declaration of Joseph Palmisano that Palmisano Law was not an operating entity and had

23   no assets or revenue.  (Doc. 14; Doc. 14-1).  The case was then stayed pending the

24   outcome of the bankruptcy.  On November 14, 2011, when the bankruptcy case was

25   dismissed, the stay was lifted.

26        Thereafter, Plaintiff moved to vacate the Order dismissing Palmisano Law or,

27   alternatively, to amend the Complaint, because Palmisano Law was an operating entity

28   with assets and revenue.  (Doc. 22).  The Court granted the Motion to Amend the

Complaint and Plaintiff filed an amended Complaint re-alleging its claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and open account against Palmisano Law and Palmisano & Associates.  (Doc. 30 and Doc. 32).

Plaintiff now moves for summary judgment on its claims against Defendants Palmisano & Associates, P.C. and Palmisano Law PLLC.  (Doc. 48 at 1).  Plaintiff specifically requests that the Court enter judgment in its favor on its breach of contract claim or, in the alternative, on its unjust enrichment claim.  (Doc. 48 at 12).  Defendants claim that there are disputed issues of material fact preventing summary judgment in Plaintiff's favor.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* at 56(c)(1)(A)&(B).  Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the non-movant to establish the existence of material fact.  *Id.*  The non-movant "must do

more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party.  *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### III.   ANALYSIS

#### A.   The Existence of a Contract

Plaintiff first argues that it is entitled to summary judgment on its breach of contract claim.  To succeed on its breach of contract claim, Plaintiff must prove "the existence of a contract, breach of contract, and resulting damages."  *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) (internal citation omitted).

Plaintiff argues that it is entitled to summary judgment on its breach of contract claim because there were contracts (the April 20, 2007, September 28, 2007, December 14, 2007, and July 22, 2008 Applications for Directory Advertising and the December 3, 2008 Advertising Agreement); Plaintiff performed all its obligations under the contracts, including publishing the advertisements; Defendants breached their obligations under the contracts by failing to pay the amount due for the advertising; and Plaintiff has been damaged in the amount of $187,068.00 plus interest.

Defendants argue that Palmisano & Associates did not breach any contract because no contract was ever formed and, if a contract was formed, Plaintiff breached the contract.  Defendants further argue that, if there was a breach of contract, only Palmisano & Associates is liable for such breach.  The Court will first consider whether valid contracts were formed between Plaintiff and Palmisano & Associates and whether Defendants have raised any viable defenses to a breach of contract claim.

1.      **Whether the Terms and Conditions were**
**Incorporated into the Contract**

Defendants claim they are not bound by the terms and conditions of the contract because:

> Palmisano & Associates never received a Standard Set of Terms and Conditions from Idearc (or anyone else) and never read any Terms and Conditions to any Idearc Application.  It was unaware of any liability provisions.
> . . .
> Palmisano Law, PLLC never received a Standard Set of Terms and Conditions and never received any Terms and Conditions to any Idearc Application.  It was unaware of any successor liability provisions.

Doc. 50 at ¶¶ 28-29.

Between April 20, 2007 and December 3, 2008, Defendant Palmisano & Associates executed Applications for Directory Advertising to purchase advertising from Plaintiff and Plaintiff provided the advertising.  (Doc. 49 ¶¶ 2-6 and Doc. 52 ¶¶ 2-6). Each contract from April 2007 to July 2008 contained the following language: "This application is subject to the Application for Directory Advertising Terms and Conditions" and "Advertiser has received a duplicate copy of the cover section of this Application and the attached Terms and Conditions, which are hereby incorporated in the cover section of this Application, and has read and understands same."  (Doc. 49-1 at Exhibits A–D).  The December 2008 contract contained the following language: "By signing this Agreement I acknowledge that I have received, read and agree to the Terms and Conditions that are part of this Agreement."  (Doc. 49-1 at Exhibit E).

In Response to Defendants' argument that they are not bound by the Terms and Conditions because they did not read and/or receive them, Plaintiff argues that the Terms and Conditions were clearly incorporated by reference into all of the contracts and, thus, whether Defendants read the Terms and Conditions is irrelevant.

> It is a basic rule of contract construction that to incorporate by reference: "[T]he reference must be *clear and unequivocal* and must be called to the attention of the other

1
2

> party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties . . . .

3
4
5
6
7
8
9
10

*Weatherguard Roofing Co., Inc. v. D.R. Ward Const. Co., Inc.*, 152 P.3d 1227, 1229 (Ariz. Ct. App. 2007) (quoting *United California Bank v. Prudential Ins. Co. of America,* 681 P.2d 390, 420 (Ariz. Ct. App. 1983) (emphasis and alterations in original)). Further, "the context in which the reference is made must make clear that the writing is part of the contract." *Id.* (quoting *Prudential*, 681 P.2d at 420). Whether the terms and conditions are attached to the contract itself is irrelevant, and "physical attachment is not necessary *if* the document . . . is *clearly and unambiguously* incorporated by reference." *Id.* at 1230 (quoting *Prudential*, 681 P.2d at 420).

11
12
13
14
15
16
17
18
19
20

Here, Defendants do not argue that the language in the contracts incorporating the terms and conditions by reference was not clear and unequivocal or that it was not brought to their attention. Indeed, the signed contracts are each one page. Aside from detailing the advertisements, the contracts executed between April 2007 and July 2008 only contain two short paragraphs, including the "incorporation by reference" provisions: "This application is subject to the Application for Directory Advertising Terms and Conditions" and "Advertiser has received a duplicate copy of the cover section of this Application and the attached Terms and Conditions, which are hereby incorporated in the cover section of this Application, and has read and understands same." (Doc. 49-1 at Exhibits A–D).

21
22
23
24

Likewise, with regard to the December 2008 contract, aside from detailing the advertisements, the contract only has one line: "By signing this Agreement I acknowledge that I have received, read and agree to the Terms and Conditions that are part of this Agreement." (Doc. 49-1 at Exhibit E).

25
26
27
28

Accordingly, in this case, the incorporation by reference was clear and unequivocal, and, by signing the contracts containing this language, Defendant Palmisano & Associates consented to the terms. Although Joseph Palmisano claims that he never

received and/or read the terms and conditions, he makes no argument that the terms and conditions were not easily available to him and his assertion that he never received the terms and conditions is contradicted by the language in the contracts that Palmisano & Associates signed, which states that the terms and conditions were received by Palmisano & Associates.

Accordingly, the terms and conditions of each contract were incorporated by reference into the contracts themselves and Defendant Palmisano & Associates is bound by all of the terms of the contracts, including those incorporated by reference.

### 2.   Whether there were Material Misrepresentations that Precluded Formation of a Contract and Whether Plaintiff Breached the Contract

Defendants next argue that "[a]s a material inducement to entering into larger contracts to be published in mid [sic] 2008 and 2009, Plaintiff's employees made material misrepresentations to Palmisano & Associates.   These representations were not only false, but in a dramatic fashion."   (Doc. 53 at 2).   Defendants argue that the "misrepresentations and breaches of contract by Plaintiff excused Defendants' performance of the contract and prevented the formation of the contract."  (Doc. 53 at 8).

The only evidence in the Record that Defendants argue support these assertions is a Declaration of Joseph P. Palmisano that states:

> 35.   Idearc made substantial and material representations to Palmisano & Associates concerning the volume of leads and revenue to be anticipated for the cost per month of the delivered advertising at 5-7 times the cost of advertising; the representations were false and based on misleading statistics.   Idearc had substantial evidence as to the falsity of the representation.   Idearc did not provide Defendant with a complete copy of the Contract.   The misrepresentations were made by the account executive and three managers for Idearc at meetings at Palmisano & Associates' office.   As an inducement to enter into the advertising Idearc misrepresented that Defendant would receive significantly greater contacts and revenue than was actually receive.   Idearc also promised, as a material

inducement to entering into the contracts with Defendant, to perform certain services to implement 123EZLegal. Idearc failed to take any action to implement it was promised. Palmisano & Associates made numerous complaints regarding the performance of the contract and 123EZLegal but Idearc failed to take any corrective action.

36.    Palmisano & Associates reasonably relied on representations, deceptive advertising and promises made. Defendant relied on the false representations regarding the quantity of contacts and level of business Defendant could expect. Idearc promised, as a material inducement to entering into the contracts with Defendant to perform certain services to implement 123EZLegal. Idearc failed to take any action to implement it as promised.

37.    Idearc provided false statistics, data on ROI, given the materials presented to Defendant at the time which induced Defendant into entering into contracts with Idearc. The failing of the advertisements as promised is self-evidence.  Idearc provided false statistics regarding the contacts and business Defendant would receive as a consequence of the services performed by Idearc. Idearc's conduct consisted of willful and knowing misrepresentations of the level of business Defendant would realize.

(Doc. 50 at ¶¶ 35-37).

Defendants argue that this declaration raises disputed facts and, as such, a jury must resolve questions of materiality and reliance.

In Reply, Plaintiff objects to these paragraphs of the Declaration of Joseph Palmisano as containing conclusory legal arguments.  Plaintiff further argues that Mr. Palmisano has created a "sham affidavit," which directly contradicts Mr. Palmisano's deposition testimony and was created solely to raise a disputed issue of fact where there is none.  As such, Plaintiff argues that the Court should disregard the paragraphs of Mr. Palmisano's declaration that directly contradict his deposition testimony.  Indeed, when a party attempts to introduce "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact and avoid summary judgment, the Court must not

consider such "sham" testimony in ruling on the motion for summary judgment. *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

Here, Plaintiff argues that Mr. Palmisano's deposition testimony that an agent of Plaintiff was going to attempt to get approval from Plaintiff regarding 123EZLegal, but that no such approval was ever given contradicts the parts of his affidavit wherein Mr. Palmisano claims that Plaintiff promised to perform certain services relating to 123 EZLegal. The Court is unable to conclude that this portion of Mr. Palmisano's deposition testimony actually contradicts Mr. Palmisano's declaration. Plaintiff has only provided portions of Mr. Palmisano's deposition testimony to the Court and nowhere in the pages and line numbers of the deposition cited to by Plaintiff in support of this argument does any party reference 123EZLegal. Accordingly, the Court is unable to ascertain if Mr. Palmisano's declaration is contradicted by his deposition testimony.

Plaintiff next argues that Defendants failed to identify any specific misrepresentations made by Plaintiff in response to discovery requests and, thus, cannot rely on their lack of disclosure to avoid summary judgment. Plaintiff cites to an interrogatory requesting identification of misrepresentations by Plaintiff and a response thereto provided by Palmisano Law, which states that "Palmisano Law PLLC was not a party to, was not involved in, and did not benefit from the Contract." (Doc. 49 at Exhibit 7). Plaintiff does not cite to any interrogatory responses by Palmisano & Associates and the Court will not impute Palmisano Law's responses to interrogatories to Palmisano & Associates. Accordingly, the Court is unable to ascertain if both Defendants refused to identify alleged misrepresentations during discovery.

Plaintiff further argues that Defendants have failed to point to a single document containing any statistics or promise of performance made by Plaintiff. Plaintiff argues that Defendants' assertions that Plaintiff promised that Defendant Palmisano & Associates would receive significantly greater contacts and revenue than was actually received, and that Plaintiff would perform certain services to implement 123EZLegal are completely unsupported by the Record and are contradicted by the contracts entered into

between April 20, 2007 and December 3, 2008, by Defendant Palmisano & Associates and Plaintiff.

The Court agrees.  Defendants have not provided any factual support for Mr. Palmisano's conclusory assertions that Plaintiff made certain promises to materially induce Palmisano & Associates to enter into the contracts.  Further, these conclusory assertions are directly contradicted by the language in the contracts themselves that provide:

> Publisher disclaims any obligations and warranties, whether express or implied, that are not expressly set forth in this Application, including without limitation:
> - Publisher does not warrant that the advertising will be published without error or omission;
> - Publisher disclaims any warranty of merchantability or fitness for a particular purpose; and
> - Publisher does not warrant the number of responses to any advertising, any other business benefit or the suitability of any advertising for any business purpose
> . . .

Application for Director Advertising Terms and Conditions, Doc. 49-1, Exhibit F at § 20. This paragraph is in the Terms and Conditions that were incorporated by reference into the Contracts executed on April 20, 2007, September 28, 2007, December 14, 2007, and July 22, 2008.  *See* Declaration of Scott Roes, Doc. 49-1 at ¶ 10; Doc. 49-1 at Exhibit D ("This Application is subject to the Application for Directory Advertising Terms and Conditions.").

> We disclaim any obligations, representations, or warranties, whether express or implied, that are not expressly set forth in this Agreement including any warranty of merchantability or fitness for a particular purpose.  Without limiting the generality of the foregoing, we do not warrant the number of responses to your Ads, the number of persons who will view your Ads, or any other business benefit . . . .

Advertising Agreement, Terms and Conditions, Doc. 49-1, Exhibit G at ¶ 9.  This paragraph is in the Terms and Conditions that were incorporated by reference into the

Contract executed on December 3, 2008. *See* Declaration of Scott Roes, Doc. 49-1 at ¶ 11; Doc. 49-1 at Exhibit E ("By signing this Agreement, I acknowledge that I have received, read and agree to the Terms and Conditions that are part of this Agreement.").

Because Mr. Palmisano's declaration directly contradicts the terms of the written agreement, it is parol evidence that the Court cannot consider. *See Sun Lodge, Inc. v. Ramada Development Co.*, 606 P.2d 30, 32 (Ariz. Ct. App. 1979) ("Evidence of statements which are squarely against the terms of the written agreement are inadmissible under the parol evidence rule.") (internal citation omitted); *Arnold v. Cesare*, 668 P.2d 891, 895 (Ariz. Ct. App. 1983) (same).

Further, "the parol evidence rule prevents the use of evidence of prior or contemporaneous oral agreement to vary, contradict or enlarge a fully integrated, written agreement." *Thomas v. Goudreault*, 786 P.2d 1010, 1018 (Ariz. Ct. App. 1989) (internal citations omitted). Here, the Contracts were fully integrated. *See* Application for Director Advertising Terms and Conditions, Doc. 49-1, Exhibit F at § 22 ("This Application (including all Publisher-provided, pre-printed addenda) describes the entire agreement between Publisher and Advertiser and supersedes any other oral or written agreement regarding the Print, Electronic, and/or Non-Directory Product Advertising listed on the cover section of this Application, except for any increase in the limitation of liability agreed to in writing by both parties in accordance with Section 6 . . . . Except as provided in this Section, no oral or written representation made by the Representative or other person that purports to modify this Application is binding on Publisher. Advertiser confirms that Advertiser has not relied upon any such representation in entering into this Application."); Advertising Agreement, Terms and Conditions, Doc. 49-1, Exhibit G at ¶ 20 ("This Agreement constitutes the entire agreement between you and us and supersedes all prior agreements and representations, whether express or implied, written or oral, with respect to the Ads and Services. . . . Neither you nor any Idearc employee or agent is authorized to change or add to this Agreement or any other agent is authorized to change or add to this Agreement or any other documents that are part of this Agreement in any

way, and any purported change or addition, whether oral or written, is void.").

Accordingly, Defendants have failed to demonstrate that there is genuine issue of material fact as to whether material misrepresentation precluded contract formation or to provide any evidence that Plaintiff breached any contract.

Based on the foregoing, there are no genuine disputed issues of fact that Plaintiff and Defendant Palmisano and Associates entered into contracts (the April 20, 2007, September 28, 2007, December 14, 2007, and July 22, 2008 Applications for Directory Advertising and the December 3, 2008 Advertising Agreement), Plaintiff performed all of its obligations under the contracts, including publishing the advertisements, and Defendants breached their obligations under the contracts by failing to pay the amount due for the advertising, and Plaintiff has been damaged in the amount of $187,068.00 plus interest.  Defendants have raised no genuine disputed issues of fact regarding valid defenses to these breaches of contracts.  Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claims against Defendant Palmisano & Associates.

## B.    Whether Palmisano Law is Liable to Plaintiff

Plaintiff next argues that Palmisano Law is liable for the contractual obligations of Palmisano & Associates based on three separate theories: (1) Palmisano Law is the successor of Palmisano & Associates; (2) Palmisano Law is the alter ego of Palmisano & Associates; and (3) Palmisano Law was unjustly enriched by Plaintiff's advertisements.

### 1.    Successor Liability

Plaintiff first argues that Palmisano Law is the successor corporation of Palmisano & Associates.

> In Arizona, the general rule for successor liability is when a corporation sells or transfers its principal assets to a successor corporation, the successor corporation is not liable for the former corporation's debts and liabilities.  *A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.,* 172 Ariz. 324, 329, 836 P.2d 1034, 1039 (App. 1992).  Legal responsibility exists only if (1) the successor corporation expressly or impliedly agreed to assume the liabilities of the predecessor corporation; (2) the alleged transactions between the two

companies amounted to a consolidation or merger of the corporations; (3) the successor corporation is a mere continuation or reincarnation of the predecessor corporation; or (4) clear and convincing evidence shows that the transfer of assets from the predecessor corporation to the successor corporation was for the fraudulent purpose of escaping debt liability. *Id.*

*Warne Investments, Ltd. v. Higgins*, 195 P.3d 645, 650 (Ariz. Ct. App. 2008).

Plaintiff argues that three theories of successor liability apply to the facts of this case. Plaintiff argues that Palmisano Law is a mere continuation or reincarnation of Palmisano & Associates. Plaintiff further argues that that Palmisano Law impliedly agreed to assume the liabilities of Palmisano & Associates when Palmisano & Associates signed the contracts, which included clauses stating that Palmisano & Associates' successors would be held liable for its debt to Plaintiff. Plaintiff finally argues that Palmisano Law is the successor corporation of Palmisano & Associates because the transfer of certain assets from Palmisano & Associates to Palmisano Law was for a fraudulent purpose.

### a.     Successor Liability under the Mere Continuation Theory

The mere continuation grounds for finding successor liability "reinforces the policy of protecting rights of a creditor by allowing a creditor to recover from the successor corporation whenever the successor is substantially the same as the predecessor." *Gladstone v. Stuart Cinemas, Inc.*, 178 Vt. 104, 878 A.2d 214, 222, ¶ 19 (2005) (citing William M. Fletcher, 15 *Fletcher Cyclopedia Corp.* § 7124. 10, at 298– 301 (1999)). The premise of this approach "is that, if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." *Id.*

*Warne*, 195 P.3d at 650-51.

Defendants argue that Palmisano Law cannot be a successor of Palmisano & Associates because Palmisano & Associates is still in existence. Defendants further argue that Palmisano Law is not a mere continuation of Palmisano & Associates. The

Court will address each argument in turn.

**1. Whether there is Evidence that Palmisano and Associates Remains a Viable Source of Relief.**

Defendants argue that Palmisano Law cannot be a "successor" to Palmisano & Associates because Palmisano & Associates still exists "for the sole purpose of winding up" and has approximately "$150,000 in accounts receivable." (Doc. 53 at 5). Plaintiff argues that Defendants have failed to present any evidence that the receivables are actually collectible, how Palmisano & Associates, which is in the process of winding up, could retain clients after ceasing active operations, or how those clients could have value. (Doc. 57 at 8-9).

To impose successor liability under the continuation of business theory, Plaintiff must show that the "predecessor no longer represents a viable source of relief." William M. Fletcher, 15 *Fletcher Cyclopedia Corp.* § 7124.10 (West, database updated September 2012) (internal citation omitted). In this case, Plaintiff has presented evidence that Palmisano & Associates no longer represents a viable source of relief, as it declared bankruptcy and exists solely for the process of winding up. Defendants have failed to present any evidence that Palmisano & Associates could pay any judgment entered in favor of Plaintiff or that the remaining accounts receivable are actually collectible. Further, even if the accounts receivable were collectible and were to be used solely to pay any potential judgment to Plaintiff, the $150,000 of accounts receivable would be insufficient to satisfy Plaintiff's undisputed damages in this case. Accordingly, Palmisano & Associates no longer represents a viable source of relief and successor liability under the mere continuation theory is plausible.

**2. Whether Palmisano Law is the Successor of Palmisano & Associates under the Mere Continuation Theory**

"To find a corporation is a mere continuation of a predecessor corporation there must be 'a substantial similarity in the ownership and control of the two corporations,' and "insufficient consideration running from the new company to the old' for the assets

passing to the new company." *Warne*, 195 P.3d at 651 (quoting *Teeters,* 836 P.2d at 1040).

        **a.**      **Substantial Similarity in Ownership and Control**

Palmisano & Associates and Palmisano Law are both owned and controlled by Joseph Palmisano.  Both companies provided the same services under substantially similar names and used the same office, phone number, and internet address.  (Doc. 49 at ¶ 16).

        **b.**      **Sufficient Consideration**

Palmisano & Associates sold office furnishings, equipment, including old computers and its phone numbers to Palmisano Law for $2,500.  (Doc. 49 at ¶ 28; Doc. 50 at ¶ 28).  Plaintiff argues that the $2,500 paid for the tangible assets of Palmisano & Associates by Palmisano Law was insufficient consideration because (1) no money was paid for the intangible assets of Palmisano & Associates, namely the knowledge and skill of Joseph Palmisano, no money was paid for the use of the internet URL, which was already in the public eye, and nothing was paid for the right to take over Palmisano & Associates' lease, all of which avoided any disruption in the transition from Palmisano & Associates to Palmisano Law and (2) the consideration paid for the phone number was insufficient because Palmisano & Associates owed a significant amount of debt for advertisement of that phone number.

In showing that consideration was insufficient, there is no requirement that Plaintiff prove the value of the intangible assets transferred, rather, Plaintiff must simply show that the successor corporation obtained intangible assets of some value to support mere continuation successor liability.  *Warne*, 195 P.3d at 652.  "To hold otherwise would mean that a service business that repeatedly reorganizes itself into a new corporate form could escape liability simply by arguing that the tangible assets of the business were de minimis and the income stream was not touchable. . . .[I]mposing liability as a mere continuation is intended to avoid this very scenario."  *Id.* at 652.  This is the very argument that Defendants are making in this case.  Defendants argue that Palmisano &

Associates can simply change form into Palmisano Law, running the same business, with the same owner and key employee, and with the same phone numbers, address, and internet URL to avoid Palmisano & Associates' debts to its creditors.  As aptly stated by the *Warne* court, "imposing liability as a mere continuation is intended to avoid this very scenario."   No reasonable juror could conclude that Palmisano Law owed no consideration for the intangible assets of Palmisano & Associates.

Further, no reasonable juror could find that $2,500 was sufficient consideration for Palmisano & Associates' tangible assets, including its phone number.  Palmisano & Associates promised to pay Plaintiff for the advertisements of a company called both "Palmisano & Associates" and "Palmisano Law" in the advertisements.  Plaintiff fulfilled its bargain and published those advertisements with the phone number and address retained by Palmisano Law.  Those advertisements, as contracted for and agreed by Plaintiff and Palmisano & Associates, whose owner was Joseph Palmisano, were jointly valued at $187,068.00.  Palmisano Law claims that its payment of $2,500 for some office furniture and the phone number of Palmisano & Associates is evidence of sufficient consideration.  Because the purchase of the assets from Palmisano Associates to Palmisano Law was not an arms-length transaction, it is not evidence of fair market value consideration sufficient to create a disputed issue of fact from which a jury could find a value less than the value offered by Plaintiff (the value of the advertising of the phone number, address, and name of the law firm, which the owner of Palmisano Associates/Palmisano Law and Plaintiff agreed were valued at $187,068.00).  Defendants have offered no evidence that $2,500 was sufficient consideration for the assets obtained from Palmisano & Associates.

Because Defendants have failed to present any evidence that there is a disputed issue of material fact as to the ownership or control of Palmisano & Associates and Palmisano Law and because Defendants have failed to present any evidence that there is a disputed issue of material fact regarding the sufficiency of the consideration from Palmisano Law to Palmisano & Associates, summary judgment in favor of Plaintiff on

the mere continuation theory of liability against Defendant Palmisano Law is appropriate.

Because the Court finds that successor liability under a mere continuation theory applies, the Court need not address Plaintiff's arguments that two other theories of successor liability apply, that Palmisano Law is the alter ego of Palmisano & Associates, or that Palmisano Law was unjustly enriched.[1]

### C.    The Amount of Damages

Defendants do not dispute that they did not make payments pursuant to the agreements between the Parties.  Likewise, Defendants do not dispute the alleged amounts due and owing to Plaintiff.  Rather, Defendants assert that a valid contract was never formed and, if a contract was formed, Plaintiff breached the contract.  Accordingly, there is no disputed issue of fact as to the amount of damages owed by Defendants and summary judgment on the issue of damages in favor of Plaintiff is appropriate.

### IV.    CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 48) is granted.

The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendants Palmisano & Associates and Palmisano Law in the amount of $187,068.00, plus interest to September 16, 2009 in the amount of $12,501.54, plus interest from September 16, 2009 to the date of this Order at a rate of 18% per annum, jointly and severally.

**IT IS FURTHER ORDERED** that any Motion for Attorneys' Fees and/or Request for Costs shall be filed as set forth in LRCiv 54.1 and LRCiv 54.2.

---

[1]    Although Plaintiff does not reference its claims for breach of the implied covenant of good faith and fair dealing or open account in its Motion for Summary Judgment, during oral argument on its Motion for Summary Judgment, Plaintiff conceded that those claims would be rendered moot if the Court granted the Motion for Summary Judgment.  Accordingly, to the extent those claims are not subsumed in the Court's judgment on the Breach of Contract and Successor Liability Claims, they are dismissed with prejudice.

**IT IS FURTHER ORDERED** that, to the extent Plaintiff's claims for open account and breach of the implied covenant of good faith and fair dealing are not subsumed in the grant of summary judgment, those claims are dismissed with prejudice.

Dated this 5th day of March, 2013.

James A. Teilborg
Senior United States District Judge